IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BAYLOR UNIVERSITY MEDICAL** | § | |
| **CENTER, BAYLOR HEART AND** | § | |
| **VASCULAR HOSPITAL AND** | § | |
| **BAYLOR MEDICAL CENTER AT** | § | |
| **GARLAND,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:09-CV-1496-L** |
| | § | |
| **NIPPON LIFE INSURANCE** | § | |
| **COMPANY OF AMERICA,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are (1) Nippon Life Insurance Company of America's Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted, filed August 17, 2009; and (2) Plaintiffs' Motion for Leave to File Plaintiffs First Amended Application to Compel Arbitration and Complaint, filed September 8, 2009.   After consideration of the motions, responses, briefs, appendices, record, replies, and applicable law, the court **grants** Nippon Life Insurance Company of America's Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted, and **denies** Plaintiffs' Motion for Leave to File Plaintiffs First Amended Application to Compel Arbitration and Complaint.

## I.    Factual and Procedural Background

Plaintiffs Baylor University Medical Center, Baylor Heart and Vascular Hospital, and Baylor Medical Center at Garland (collectively, "Plaintiffs") originally filed their Application to Compel Arbitration against Defendant Nippon Life Insurance Company of America ("Defendant") in the

134th Judicial District Court, Dallas County, Texas, on June 5, 2009.  Defendant removed the action

to this court on August 12, 2009, on the grounds that diversity of citizenship existed between the

parties and that the amount in controversy exceeded $75,000, exclusive of interest and costs.

This action arises out of an arbitration clause contained in a Hospital Services Agreement

contract (the "HSA") entered into by Plaintiffs and nonparty Private Healthcare Systems, Inc.

("PHCS") on January 1, 2002, to which Plaintiffs contend that Defendant is bound.  A provision of

the HSA states that it is an agreement entered into by only Plaintiffs and PHCS, and that "no such

third party shall have any right to enforce or enjoy any benefit created or established under this

Agreement." Def.'s App. 59 ¶ 6.4.  Plaintiffs allege that Defendant is a third party administrator for

managed healthcare plans operating under the HSA, relying on a Payor Acknowledgment that

Defendant executed more than three years earlier on June 4, 1998.

Defendant entered into an Administrative Agreement contract with PHCS on  June 5, 1998.

The Administrative Agreement contains a choice of law provision specifying that New York law

governs the contract.  *Id.* at 12 ¶ 12.4.  Another provision of the Administrative Agreement states

that "[n]othing in this Agreement, whether express or implied, shall be deemed to confer on any

person, other than [Defendant and PHCS] . . . , any right, obligation, remedy, or liability." *Id.* ¶

12.6.  The Administrative Agreement incorporates multiple attachments, including the June 4, 1998

Payor Acknowledgment executed by Defendant.  The Payor Acknowledgment provides that PHCS

would contract with certain preferred providers and contains an agreement by Defendant to pay in

accordance with PHCS's agreements with those preferred providers.  *Id.* at 41-42.

Plaintiffs contend that they are owed money by Defendant and have demanded arbitration

pursuant to the HSA, arguing that "Defendant became a party to the HSA by the execution of the

Payor Acknowledgment." Pl.'s Pet. at 7 ¶ 23. Defendant has declined Plaintiffs' request to arbitrate, on the grounds that it never agreed to arbitrate disputes with Plaintiffs. Plaintiffs further contend that Defendant should be forced to arbitrate based on equitable estoppel. Defendant has moved for dismissal of Plaintiffs' claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.     Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm*

*Mutual Auto. Ins. Co.*, 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

Although Defendant has included an appendix and attached exhibits to its motion, and although Plaintiffs have responded to Defendant's motion with an appendix and attached exhibits of their own, the court will not treat Defendant's motion to dismiss as one for summary judgment.

**Memorandum Opinion and Order – Page 4**

*See Collins*, 224 F.3d at 499 ("In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.").  In this instance, the court determines that the attached documents are central to Plaintiffs' claim and referred to, at least implicitly, in Plaintiffs' application to compel arbitration.  In any event, whether the court considers this motion pursuant to Rule 12(b)(6) or Rule 56, the result would be the same.  The parties have had ample opportunity to present their defenses and claims in their briefing, and they have lodged no objections to any exhibits or attachments.

## III.    Analysis

The court will first consider (1) Nippon Life Insurance Company of America's Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted.  The court will then consider (2) Plaintiffs' Motion for Leave to File Plaintiffs First Amended Application to Compel Arbitration and Complaint.  For the purposes of the analysis to follow, the court determines that Plaintiffs' application to compel arbitration is governed by the Federal Arbitration Act (the "FAA") because the transaction at issue relates to interstate commerce, as the parties are citizens of different states. *See* 9 U.S.C. § 2.

### A.    Defendant's Rule 12(b)(6) Motion to Dismiss

The court first considers Defendant's motion to dismiss.  Plaintiffs contend in their application to compel arbitration and in their response to Defendant's motion that a valid arbitration agreement exists between Plaintiffs and Defendant.  Defendant does not dispute the validity of the arbitration provision of the HSA but contends that the clause is inapplicable because Defendant was not a party to that agreement.  Plaintiffs argue that (1) the arbitration agreement binds Defendant because it agreed to be a party to the HSA upon its execution of the Payor Acknowledgment; and

(2) even if Defendant is not contractually bound to the arbitration agreement, the doctrine of equitable estoppel applies because Defendant received the benefits of the HSA. The court will consider both arguments.

### 1.    Contractual Agreement

When considering the enforceability of an arbitration agreement, "the court must determine whether the parties agreed to arbitrate the dispute." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (quoting *R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003) (quotation omitted). Defendant argues that the first element is lacking, that there is no agreement to arbitrate. The court therefore must determine whether such agreement exists. Ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004).

Plaintiffs contend that Defendant is contractually bound to the arbitration agreement because of the well-settled principle in Texas contract law that multiple instruments pertaining to the same transaction may be read together to ascertain the parties' intent. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000). Plaintiffs rely foremost on a 2004 Northern District of Texas case, drawing an analogy therein to this case. That case involved a defendant, Epoch, who entered into a Subscriber Services Agreement contract with PHCS, containing terms similar to the Administrative Agreement in this case. *Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*,

340 F. Supp. 2d 749, 752 (N.D. Tex. 2004).  Also as in this case, the plaintiffs entered into a HSA with PHCS, which contained similar terms to the HSA in this case and further required PHCS to enter into a Payor Acknowledgment with its "payors," including Epoch.  *Id.*  The plaintiffs ultimately brought a breach of contract claim against Epoch when it refused to pay for medical care given to a patient as contemplated by the series of contractual agreements.  *Id.* at 753.  Epoch filed a motion for summary judgment, defending on the grounds that it was not a party to any contract with the plaintiffs and therefore could not have breached.  *Id.*  The court held that the Subscriber Services Agreement and the Payor Acknowledgment constituted a single, unified contract when it came to Epoch's obligation to timely pay the plaintiffs' claims.  *Id.* at 755.

The situation in this case, however, differs in one key respect.  Plaintiffs are not suing Defendant for its failure to pay a claim; instead, Plaintiffs are suing Defendant to compel arbitration. Whereas the *Baylor* court determined that the series of agreements amounted to a single, unified contract, it was careful to specify that such contract was created to the extent that it covered Epoch's obligation to timely pay the plaintiffs' claims.  *See id.*  There is no dispute that the agreements at issue in this case impose this same obligation upon Defendant.  *See* Def.'s App. 41 ¶ 1.2 ("Payor [Defendant] agrees to pay or arrange to pay PHCS Preferred Providers [Plaintiffs] in accordance with the PHCS Preferred Provider Agreement [the HSA] for such Preferred Provider [Plaintiffs] . . .").  Conspicuously absent from this provision is an agreement by Defendant to arbitrate any such claims with PHCS Preferred Providers, including Plaintiffs.

Furthermore, while reading multiple instruments pertaining to the same transaction together to ascertain the parties' intent is a sound principle of Texas contract law, New York law controls Defendant's agreement with PHCS.  *Id.* at 12 ¶ 12.4.  Accordingly, that particular Texas contract

principle is not applicable to this case.  *See Washington Mut. Fin. Group*, 364 F.3d at 264. ("[I]n determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the *particular state that governs the agreement*.") (citation omitted) (emphasis added).  Under the law of New York, reading multiple instruments together to ascertain the intent of the parties is something employed with greater restriction than in Texas.  *See Perl v. Smith Barney Inc.*, 230 A.D.2d 664, 665 (App. Div. 1996) (stating that, under New York law, multiple instruments may only be read together to form a single contract if the instruments *clearly demonstrate* the parties intended for the writings to function as such) (emphasis added); *Dietrich v. Chemical Bank*, 454 N.Y.S.2d 490, 491 (N.Y. Sup. Ct. 1981), *aff'd*, 92 A.D.2d 786 (N.Y. App. Div. 1983) ("A contract can be compromised of separate writings or documents *if the writings make clear that they are to be read in conjunction* with other writings *to determine the intent of the parties*.") (emphasis added).

Whereas in Texas separate instruments may be read together to ascertain the parties' intent, in New York the parties' intent must already be clear.  In this case, Defendant has established that its original agreement with PHCS was drafted specifically to remove privity of contract between Defendant and PHCS Participating Providers, including Plaintiffs, by July 1, 2000.  Def.'s App. 3 ¶ 2.2(c).  Because Plaintiffs entered into the HSA with PHCS on January 1, 2002, this provision makes clear that Defendant was not intended to be in contractual privity with Plaintiffs.  The court therefore will not read these instruments together to form a single, unified contract with respect to every term.  Accordingly, all other contract provisions of the HSA aside from the ones pertaining to method and timeliness of payment are inapplicable to Defendant with respect to Plaintiffs' claims.  The arbitration agreement does not apply to Defendant because Defendant never agreed to arbitrate disputes with Plaintiffs.  Plaintiffs have failed to state a claim upon which relief can be granted.  In

light of this determination, the court need not address the second element of whether the dispute falls within the scope of the arbitration agreement.

## 2. Equitable Estoppel

Alternatively, Plaintiffs argue that Defendant is bound to the arbitration agreement under a theory of equitable estoppel known as "direct-benefits estoppel." *See In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006). Plaintiffs argue that Defendant knowingly exploited the HSA for its own benefit and that it cannot now avoid the HSA's arbitration agreement by contending that it was not a party to the contract. In its motion, Defendant contends that Plaintiffs have set forth no evidence and alleged no facts evidencing that Defendant has "embraced the contract" or has "consistently maintained that other provisions of the same contract should be enforced" for its benefit. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 134, 135 n.46 (Tex. 2005). Plaintiffs respond that benefits of the HSA have flowed to Defendant, evidenced by Plaintiffs' claim for payment for medical services rendered to members of Defendant's managed healthcare plans. The court does not find Plaintiffs' argument persuasive.

A provision of the HSA states that it is an agreement entered into by only Plaintiffs and PHCS, and that "no such third party shall have any right to enforce or enjoy any benefit created or established under this Agreement." Def.'s App. 59 ¶ 6.4. In light of this provision, the court cannot see how Defendant has enforced—let alone had a right to enforce—any benefit created by the HSA. By the same token, Plaintiffs cannot compel Defendant, who Plaintiffs argue is a third party to the HSA, to enjoy the benefit of the arbitration agreement that was established under the HSA; this clause specifically prohibits such action. As Defendant notes in its motion, all of the benefits that it has enjoyed or enforced arise from its Administrative Agreement with PHCS, not the HSA. The

Administrative Agreement therefore serves as a separate, independent basis for such benefits outside of the HSA.  Accordingly, equitable estoppel does not apply and Defendant is not bound to the arbitration agreement contained in the HSA.  Plaintiffs have failed to state a claim upon which relief can be granted.

### B.    Plaintiffs' Motion for Leave to Amend

Plaintiffs have requested leave from the court to amend their original application to compel arbitration.  Relying on a different contractual provision, Plaintiffs' proposed amendment would bring an alternate theory against Defendant to compel arbitration.  Plaintiffs' amended claim appears to turn on a dispute resolution clause that exists in Defendant's Administrative Agreement with PHCS.  *See* Def.'s App. 8 ¶ 9.3 ("Any controversy or claim arising out of . . . this Agreement . . . shall be settled by binding arbitration . . . .").

This new theory of contractual breach rests on Plaintiffs' contention that the Administrative Agreement is so related to the HSA that the contracts' combined terms constitute a single, unified contract, which is the same ground previously analyzed by the court.  Plaintiffs contend, as they did in their original application to compel arbitration, that Defendant made itself a party to the HSA when it executed the Payor Acknowledgment, which was incorporated into Defendant's Administrative Agreement.  Because the Administrative Agreement contains an arbitration clause, Plaintiffs argue that Defendant is bound to arbitrate with Plaintiffs with respect to any alleged breaches of the HSA.  The court is unpersuaded.

Plaintiffs' new theory of contractual breach does not alter the court's previous determination that no contractual privity exists between Defendant and Plaintiffs, or that contractual privity was intended to exist beyond Defendant's obligation to pay Plaintiffs' claims in accordance with the

**Memorandum Opinion and Order – Page 10**

HSA. This obligation does not entail an additional obligation to arbitrate disputes with Plaintiffs pursuant to the HSA or pursuant to Defendant's Administrative Agreement. As the HSA and Administrative Agreement respectively make clear, the terms of each contract were contemplated between only the *parties* to each contract. *See id.* at 59 ¶ 6.4 (limiting the HSA's terms to its parties, PHCS and Plaintiffs); *Id.* at 12 ¶ 12.6 (limiting the Administrative Agreement's terms to its parties, PHCS and Defendant). It is undisputed that Plaintiffs and Defendant never signed a contract together, let alone one that contained an arbitration clause.

The court therefore determines that allowing amendment in this case would be futile because the proposed amended application to compel arbitration would still fail to state a claim upon which relief could be granted. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Further, in light of the court's analysis, the court finds that Plaintiffs cannot allege any theory of contractual breach in this case that would compel arbitration with Defendant, as no arbitration agreement exists between the parties. Accordingly, the court declines to allow Plaintiffs a second bite at the apple.

## IV.    Conclusion

For the reasons stated herein, the court determines that Plaintiffs have failed to state a claim upon which relief can be granted and that further amendment would be futile. Accordingly, the court **grants** Nippon Life Insurance Company of America's Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted and **denies** Plaintiffs' Motion for Leave to File Plaintiffs First Amended Application to Compel Arbitration and Complaint. This action is **dismissed with prejudice**. Judgment will issue by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**Memorandum Opinion and Order – Page 11**

**It is so ordered** this 28th day of January, 2010.

Sam A. Lindsay
United States District Judge